84 N.J. Super. 297 (1964)
201 A.2d 758
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DENNIS GEORGE KING, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1964.
Decided June 24, 1964.
*299 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Gerald Weinstein argued the cause for appellant (Messrs. Lloyd, Horn, Megargee & Steedle, attorneys).
Mr. Morgan E. Thomas, Assistant Prosecutor, argued the cause for respondent (Mr. Augustine A. Repetto, Atlantic County Prosecutor, attorney; Mr. Ernest M. Curtis, of counsel and on the brief).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Defendant appeals from a conviction of armed robbery. The basis of his appeal is that certain evidence used against him at trial, namely, a raincoat, cap and a gun found by the police in the apartment in which defendant was living, had been illegally obtained by reason of an unlawful search and seizure. Defendant, prior to trial, moved to suppress the evidence, but the trial court after a preliminary hearing ruled that defendant had consented to the search.
Defendant also contends that the trial court committed plain error in allowing Mrs. Ireland, the victim of the robbery, to testify at trial that within a week after the crime had been committed, she identified defendant in a police line-up, and that her identification was based in part on her recognizing the sound of defendant's voice after the police had him repeat in her presence the words spoken by the actual robber during the robbery.
Defendant King was suspected of having committed the robbery of Mrs. Ireland. Consequently on the day in question, at about one-thirty in the morning, a police officer and *300 a detective drove to the apartment building in which defendant was then living and parked their car in the rear of the premises. Defendant was occupying an apartment on the second floor of the building. The State's version of the search is as follows. The police officer rang the bell of defendant's apartment, and when defendant answered, he was told to get dressed that there were "a few questions that we would like to ask him down at City Hall." Defendant put some clothes on and went down to the police car and got in and was told by the detective that he was under arrest as a suspect in the robbery of Mrs. Ireland. Defendant denied that he had committed the robbery. The engine of the car was started, but before they drove off defendant was asked for permission to search the apartment and assented. The police officer testified that defendant said "all right," and thereafter did not object to the search. The detective testified that defendant said "yes" in answer to the inquiry. All three then got out of the car and went back to the apartment. Entry was had after defendant opened the door with his key. There was a Mrs. Ford also living in the apartment with defendant and she was also asked for permission to search which she gave.
The search of defendant's room disclosed the raincoat, cap, and gun later used at defendant's trial and identified by Mrs. Ireland as similar to these worn and used by the robber. Defendant and Mrs. Ford both testified that the police had simply told them that they were going to search the apartment and had not asked for or been given permission to search.
The general rule is that a proper search warrant is a prerequisite to a lawful search. Where the State seeks to justify a search without a warrant on the ground that the person involved consented to the search, it has the burden of proving that the consent was freely and intelligently given. Channel v. United States, 285 F.2d 217, 219 (9 Cir. 1960); cf. State v. Robinson, 74 N.J. Super. 305, 310 (Cty. Ct. 1962).
In Channel, supra, a narcotics suspect had been arrested by a narcotics officer and taken to bureau headquarters. While *301 there he allegedly consented to a search of his apartment. Two narcotics officers went to the apartment, searched it, and found incriminating evidence. The suspect remained in custody at bureau headquarters while the search was had. A motion to suppress the evidence seized in the apartment was denied on the ground that the suspect had consented to the search. On appeal, after the suspect's conviction, the Circuit Court of Appeals stated that the pertinent rule was as follows.
"A search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied. The Government has the burden of proving by clear and positive evidence that such consent was given. Judd v. United States, 89 U.S. App. D.C. 64, 190 F.2d 649, 650." (285 F.2d, at p. 219)
Applying the foregoing principle, the court reversed the conviction on the ground that the motion to suppress should have been granted. In so holding, the court stated that even though the trial court's finding that the suspect had assented to the search be accepted, the central issue was not credibility, but rather whether the evidence of consent, under the circumstances of his being under arrest in custody and during interrogation, warranted a finding that the consent had been freely and intelligently given. The court held that the evidence did not warrant such a finding. See also Higgins v. United States, 93 U.S. App. D.C. 340, 209 F.2d 819, 820 (D.C. Cir. 1954).
In the instant case, at the preliminary hearing on defendant's motion to suppress, the trial court found that "there is no question that the search was made pursuant to consent." Undoubtedly it accepted the State's version of the matter rather than defendant's. However, as noted in Channel, supra, the critical issue was not credibility. The real question was whether the evidence presented by the State, taken at full value, met the required standard of a freely given consent.
*302 We conclude that the testimony of the police officer and detective, even though accepted as true, did not warrant a finding that defendant's consent was freely given. At the time defendant said "all right" or "yes" he was alone with two officers at about one-thirty in the morning, and was sitting in a police car parked in the rear of the apartment premises. He was under arrest, in custody and charged with the commission of a serious crime. Such an atmosphere is more conducive to a yielding to police authority than to the free and intelligent waiver by defendant of his constitutional rights. Judd v. United States, 89 U.S. App. D.C. 64, 190 F.2d 649, 651-652 (D.C. Cir. 1951), and see State v. Parsons, 83 N.J. Super. 430, 443 (App. Div. 1964).
Defendant's assent to the search must be weighed in the light of the circumstances under which it was given. So viewed, we conclude that the State failed to prove that it was freely and voluntarily given. Channel, supra; Judd, supra. This ruling does not impair reasonable law enforcement. The police officers had ample time to obtain a search warrant (assuming probable cause therefor) before visiting the apartment.
The State, however, argues that the search can be sustained because it was incidental to a lawful arrest. This basis was not urged on the motion. However, assuming defendant's arrest to have been lawful  we need not decide whether in fact it was lawful  the search was not incidental thereto. The arrest did not take place in or at defendant's apartment but in the police car parked in the rear of the premises. After the arrest the officers went up to defendant's apartment and searched it.
In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the petitioner was arrested in an automobile and taken to police headquarters where the automobile was searched and evidence of criminal activity found. Cf. State v. Mpetas, 79 N.J. Super. 202 (App. Div. 1963). The United States Supreme Court held the search to be illegal, stating at page 780 of 11 L.Ed.2d, at page 883 of 84 *303 S.Ct.: "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." A search, to be considered incidental to a lawful arrest must be made at the time and place of the arrest. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). See also State v. Doyle, 42 N.J. 334 (1964).
Because there will have to be a retrial, a ruling should be made as to defendant's argument that the trial court committed plain error in permitting identification evidence based upon voice demonstration. The contention made is that by being told to give a voice demonstration, defendant was required to incriminate himself, and that the identification based upon such demonstration should have been excluded from evidence.
This contention is without merit. The sound of a person's voice, as well as the color of his hair or eyes, or his fingerprints is one of his identifying characteristics within the meaning of N.J.S. 2A:84A-19, Rule 25, which provides, inter alia:
"Subject to Rule 37, every natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him or expose him to a penalty or a forfeiture of his estate, except that under this rule:
(a) no person has the privilege to refuse to submit to examination for the purpose of discovering or recording his corporal features and other identifying characteristics or his physical or mental condition; * * *."
Of course a voice demonstration, as any other type of identification, must be governed by the principle of fundamental fairness. If properly conducted however, it does not conflict with the privilege against self-incrimination, and identification based upon it is admissible in evidence.
Reversed.